# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 126 HEALTH AND WELFARE TRUST FUND<br>3455 Germantown Pike<br>Collegeville, PA 19426,<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 126 RETIREMENT TRUST FUND<br>3455 Germantown Pike<br>Collegeville, PA 19426,<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 126 OCCUPATIONAL SAFETY, HEALTH AND EDUCATION TRUST FUND<br>3455 Germantown Pike<br>Collegeville, PA 19426,<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 126 NORTHEAST APPRENTICESHIP AND TRAINING TRUST FUND<br>3455 Germantown Pike<br>Collegeville, PA 19426,<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 126<br>3455 Germantown Pike<br>Collegeville, PA 19426,<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 126 COPE FUND<br>3455 Germantown Pike<br>Collegeville, PA 19426,<br><br>NATIONAL ELECTRICAL BENEFIT FUND<br>2400 Research Boulevard, Suite 500<br>Rockville, MD 20850, | Civil Action No. |

153898533.2

<div style="border:1px solid black; padding:8px;">

NECA-IBEW NATIONAL LABOR-
MANAGEMENT COOPERATION COMMITTEE
2003 Renaissance Blvd.
King of Prussia, PA 19406,

      Plaintiffs,

  v.

LAND SERVICES, INC,
7603 256th St. N.
Port Byron, IL 61275,

      Defendant.

</div>

# COMPLAINT

Plaintiffs International Brotherhood of Electrical Workers Local Union No. 126 Health and Welfare Trust Fund, International Brotherhood of Electrical Workers Local Union No. 126 Retirement Plan Trust Fund, International Brotherhood of Electrical Workers Local Union No. 126 Occupational Safety, Health, and Education Trust Fund, International Brotherhood of Electrical Workers Local Union No. 126 Northeast Apprenticeship and Training Trust Fund, and National Electrical Benefit Fund (the "Funds"), International Brotherhood of Electrical Workers Local Union No. 126 (the "Union"), International Brotherhood of Electrical Workers Local Union No. 126 COPE Fund (the "COPE Fund"), and NECA-IBEW National Labor-Management Cooperation Committee (the "NLMCC") (collectively, the Funds, the Union, the COPE Fund and the NLMCC are the "Plaintiffs) bring this action against Defendant Land Services, Inc. ("Land Services").

## INTRODUCTION

1. This is an action to compel documents, including but not limited to monthly remittance reports, that are required to be submitted by employers pursuant the applicable collective bargaining agreements and trust agreements, and to collect delinquent contributions that are due and owing to the Plaintiffs, along with interest, liquidated damages, and attorneys fees and costs. The Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act, as amended (hereinafter "ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Labor Management Relations Act of 1947, as amended (hereinafter the "LMRA"), 29 U.S.C. § 185, *et seq*.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 by virtue of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(d)(1), 1132(e)(1), 1132(f), and 1145, and the LMRA, 29 U.S.C. § 185(a).

3. Venue lies in this district pursuant to 29 U.S.C. § 1132(e)(2), as the Funds are administered in this District, and 29 U.S.C. § 185(c). Venue is also proper in this district because Land Services performed work which gave rise to the obligation to make contributions and other payments to the Plaintiffs within this district.

## PARTIES

4. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

5. The Funds are each an "employee benefit plan" and a "multiemployer plan" within the meaning of ERISA, 29 U.S.C. §§ 1002(3); 1002(37). The Funds are also trust funds established and maintained pursuant to the LMRA, 29 U.S.C. § 186. The Funds have the authority to

commence this action pursuant to ERISA, 29 U.S.C. § 1132(d)(1) and maintain their principal places of business at 3455 Germantown Pike, Collegeville, PA 19426, with the exception of the National Electrical Benefit Fund, which maintains its principal place of business at 2400 Research Boulevard, Suite 500, Rockville, MD 20850.

6. The Union is an unincorporated association and labor union, which is the exclusive representative for purposes of collective bargaining of employees in the outside electrical contracting industry, including employees of Land Services. The Union maintains its principal place of business at 3455 Germantown Pike, Collegeville, PA 19426.

7. The COPE Fund is an unincorporated association established pursuant to 52 U.S.C. § 30101, *et seq.*, for the purpose of advancing the political interests of the members of the Union by lawfully influencing the selection, nominations, election, and/or appointment of individuals for political office. The COPE Fund maintains its principal place of business at 3455 Germantown Pike, Collegeville, PA 19426.

8. The NLMCC is an unincorporated association established pursuant to Section 6 of the Labor Management Cooperation Act of 1978, 29 U.S.C. § 175(a) and the LMRA, 29 U.S.C. § 186(c)(9). The NLMCC maintains its principal place of business at 2003 Renaissance Blvd., King of Prussia, PA 19406.

9. Land Services is an employer in an industry affecting commerce within the meaning of ERISA, 29 U.S.C. §§ 1102(5), 1102(11), and 1102(12) and an employer within the meaning of the LMRA, 29 U.S.C. § 185. Land Services has a principal place of business at 7603 256th St. N. Port Byron, IL 61275.

## BACKGROUND AND FACTS

10. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

11. On August 4, 2022, Land Services entered into a Letter of Assent in which it agreed to be bound to the terms of the Outside Utility labor agreement (the "Utility Agreement") between the Union and Northeastern Line Constructors Chapter, NECA. A true and correct copy of the Letter of Assent for the Utility Agreement is attached hereto as Exhibit A. A true and correct copy of the Utility Agreement, including relevant amendments and successor agreement, is attached hereto as Exhibit B.

12. The Letter of Assent for the Utility Agreement states that Land Services "agrees to comply with, and be bound by, all the provisions contained in said current and subsequent approved labor agreements." *See* Exhibit A.

13. On August 4, 2022, Land Services also entered into a Letter of Assent in which it agreed to be bound to the terms of the Outside Commercial labor agreement (the "Commercial Agreement") between the Union and Penn Del Jersey Chapter, NECA. A true and correct copy of the Letter of Assent for the Commercial Agreement is attached hereto as Exhibit C. A true and correct copy of the Commercial Agreement is attached hereto as Exhibit D.

14. The Letter of Assent for the Commercial Agreement states that Land Services "agrees to comply with, and be bound by, all the provisions contained in said current and subsequent approved labor agreements." *See* Exhibit C.

15. By entering into the Letter of Assent for the Utility Agreement, Land Services agreed to submit monthly remittance reports to the Plaintiffs documenting the hours worked and the gross wages paid to each employee employed pursuant to the Utility Agreement and the basis

for the amounts submitted to the Funds for that month.  *See* Exhibit B at Article III, Section 3:16; Article X, Section 10:11; Articles XI through XIII.

16. By entering into the Letter of Assent for the Utility Agreement, Land Services agreed to make full and timely payments to the Plaintiffs on a monthly basis on behalf of the employees employed pursuant to the Utility Agreement based on the number of hours worked and/or the gross wages paid to such employees.  *See* Exhibit B at Article III, Section 3:16; Article X, Section 10:11; Articles XI through XIII.

17. By entering into the Letter of Assent for the Commercial Agreement, Land Services agreed to submit monthly remittance reports to the Plaintiffs documenting the hours worked and the gross wages paid to each employee employed pursuant to the Commercial Agreement and the basis for the amounts submitted to the Funds for that month.  *See* Exhibit D at Article III, Section 3.10; Article XI, Section 11.10; Articles XII through XIV; and page 35 titled "Payments and Delinquencies."

18. By entering into the Letter of Assent for the Commercial Agreement, Land Services agreed to make full and timely payments to the Plaintiffs on a monthly basis on behalf of the employees employed pursuant to the Commercial Agreement based on the number of hours worked and/or the gross wages paid to such employees.  *See* Exhibit D at Article III, Section 3.10; Article XI, Section 11.10; Articles XII through XIV; and page 35 titled "Payments and Delinquencies."

19. By entering into the Letter of Assent for the Utility Agreement, Land Services adopted and agreed to be bound by the Trust Agreements for each Fund.  *See* Exhibit B at Articles XI -XIII.

20.     By entering into the Letter of Assent for the Commercial Agreement, Land Services adopted and agreed to be bound by the Trust Agreements for each Fund. *See* Exhibit D at Articles XII - XIV.

21.     The Trust Agreements require employers, like Land Services, to furnish information and reports regarding, *inter alia,* hours worked and wages paid to employees.

22.     The Trust Agreements provide, *inter alia*, that in the case of delinquent contributions, the Funds are entitled to liquidated damages, interest, and attorneys fees and costs.

23.     The Trust Agreements also allow for the adoption of rules, regulations, and policies.

24.     The Trustees of the Funds have promulgated a Policy for the Collection of Delinquent Contributions, Payroll Audits, Refund of Mistaken Contributions and Bonding (the "Delinquency Policy").  A true and correct copy of the Delinquency Policy is attached hereto as Exhibit E.

25.     The Delinquency Policy *inter alia*, provides that in the case of delinquent contributions, the Funds are entitled to liquidated damages, interest, and attorneys fees and costs.

26.     Upon information and belief, Land Services performed work within the jurisdiction of the Union with employees covered by the Utility Agreement and/or the Commercial Agreement in 2023, including but not limited to the months of May, June, July, August, and September of 2023.

27.     Land Services submitted a late remittance report for work performed in May 2023.

28.     Land Services has failed to submit remittance reports for work performed in June, July, August, and September of 2023, as well as any other months during which it performed work covered by the Utility Agreement and/or the Commercial Agreement.

29. Without the remittance reports, the Plaintiffs are unable to determine the specific amounts of contributions and payments owed to them.

30. The Plaintiffs sent at least written four demands for the outstanding remittance reports and owed contributions and other payments from Land Services.

31. The Plaintiffs, through counsel, sent a letter demanding the outstanding remittance reports and owed contributions and other payments from Land Services.

32. Land Services has failed to submit the outstanding remittance reports and make any contributions and other payments that are due and owing to the Plaintiffs.

## CAUSES OF ACTION

## COUNT I – ERISA

### Funds v. Land Services

33. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

34. ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

35. ERISA, at 29 U.S.C. § 1132(g)(2), provides that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—

    a. the unpaid contributions,

    b. interest on the unpaid contributions,

    c. an amount equal to the greater of—

        i. interest on the unpaid contributions, or

      ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

  d. reasonable attorney's fees and costs of the action, to be paid by the defendant, and

  e. such other legal or equitable relief as the court deems appropriate."

36. ERISA also provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1132(a)(3).

37. Land Services failure to submit remittance reports, failure to pay liquidated damages, and failure to pay contributions and any other payments that are due and owing constitutes a violation of the Trust Agreements, Delinquency Policy, Utility Agreement and/or the Commercial Agreements, giving rise to a violation of 29 U.S.C. § 1145 and 29 U.S.C. § 1132(a)(3).

38. The violation of 29 U.S.C. § 1145 and 29 U.S.C. § 1132(a)(3) entitles the Funds to an injunction against Land Services ordering it to immediately submit remittance reports and to other equitable relief to address Land Services violations and enforce the terms of the Trust Agreements, Delinquency Policy, and Utility Agreement and/or the Commercial Agreements.

39. The violation of 29 U.S.C. § 1145 and 29 U.S.C. § 1132(a)(3) also entitles the Funds to the amount of outstanding contributions, liquidated damages, interest, attorneys' fees and costs, as well as any other amounts due to the Funds.  29 U.S.C. § 1132(g)(2).

40. Land Services' financial books and records are in its exclusive control.

41. The potential hardships to Land Services by an order requiring it to provide information, documents, books and records are outweighed by the Funds' interest in knowledge of hours worked by, and wages paid to, employees covered by the Utility Agreement and/or the Commercial Agreement and general assurance that Land Services is fulfilling its contractual and statutory obligations to the Funds.

42. There is no adequate remedy at law.

43. An order requiring Land Services to provide information, documents, books and records regarding hours worked by, and wages paid to, employees covered by the Utility Agreement and/or the Commercial Agreement would be in the public interest.

WHEREFORE, the Funds and the Union respectfully request that the Court:

A. Enter a judgment and injunction ordering Land Services to provide information, documents, books and records regarding hours worked by, and wages paid to, employees covered by the Utility Agreement and/or the Commercial Agreement from May 2023 to the date of judgment;

B. Retain jurisdiction to enter judgment for any contributions found due and owing as a result of the submission of such information, documents, books and records to the Funds;

C. Enter judgment in favor of the Funds and against Land Services in the amount of contributions and other payments owed pursuant to the Utility Agreement and/or the Commercial Agreement;

D. Enter judgment in favor of the Funds and against Land Services in the amount of interest and liquidated damages provided by ERISA, 29 U.S.C. § 1132(g)(2)(b – c);

    E.    Enter judgment in favor of the Funds and against Land Services for attorneys' fees and costs provided by ERISA, 29 U.S.C. § 1132(g)(2)(d).

    F.    Grant any other further relief as the Court finds just and proper.

## COUNT II – LMRA

### The Funds, the Union, the COPE Fund, and the NLMCC v. Land Services

44.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

45.    The LMRA provides for an action regarding "suits for violation of contracts between an employer and a labor organization[.]" 29 U.S.C. § 185(a).

46.    The Utility Agreement and the Commercial Agreement require employers, like Land Services, to submit monthly remittance reports and make timely contributions and other payments to the Funds, the Union, the COPE Fund, and the NLMCC.

47.    Land Services breached the Utility Agreement and/or the Commercial Agreement by failing to submit monthly remittance reports for work performed in June, July, August, and September of 2023, as well as any other months during which it performed work covered by the Utility Agreement and/or the Commercial Agreement, and by failing to timely make contributions and other payments to the Funds, the Union, the COPE Fund, and the NLMCC.

48.    Land Services' breach has caused damages to the Funds, the Union, the COPE Fund, and the NLMCC.

49.    Land Services' breach, and this action, are excluded from the Utility Agreement's and the Commercial Agreement's grievance and arbitration procedure.

WHEREFORE, the Funds and the Union respectfully request that the Court:

153898533.2

A. Enter judgment in favor of the Funds, to the extent that the Funds are not completely satisfied by a judgment on Count I of this Complaint, the Union, the COPE Fund, and the NLMCC, and against Land Services, in the amount of contributions and other payments owed pursuant to the Utility Agreement and/or the Commercial Agreement;

B. Enter judgment in favor of the Funds, to the extent that the Funds are not completely satisfied by a judgment on Count I of this Complaint, the Union, the COPE Fund, and the NLMCC, and against Land Services, in the amount of interest and liquidated damages on the amounts owed pursuant to rates set forth in the Utility Agreement and/or the Commercial Agreement, including the Trust Agreements and Delinquency Policy which have been incorporated by reference therein;

C. Enter judgment in favor of the Funds, to the extent that the Funds are not completely satisfied by a judgment on Count I of this Complaint, and the Union, the COPE Fund, and the NLMCC, and against Land Services, for attorneys' fees and costs owed pursuant to the Utility Agreement and/or the Commercial Agreement, including the Trust Agreements and Delinquency Policy which have been incorporated by reference therein;

D. Grant any other further relief as the Court finds just and proper.

Respectfully submitted,

*/s/Andrew M. MacDonald*
Andrew M. MacDonald, Esq.
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
(215) 444-7174
amacdonald@foxrothschild.com

*Attorneys for Plaintiffs*

Dated: January 31, 2024

153898533.2